```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CAMILLA BROWN                 :      CIVIL ACTION
                              :
     v.                       :
                              :
TRACEY TURK, et al.           :      NO. 07-4028
```

MEMORANDUM

McLaughlin, J.                                    May 7, 2009

      In this § 1983 action, the plaintiff alleges that the defendants violated her civil rights when she was arrested at her home on June 6, 2007. She claims that the defendants, a police officer and a detective, unlawfully detained her, searched her home, and confiscated her car without probable cause. She also claims that they fabricated charges and evidence against her because she refused to provide them information regarding her boyfriend, who the defendants suspected had been involved in a robbery the previous day. The plaintiff argues that the defendants' actions violate her rights under the Fourth Amendment. The defendants have moved for summary judgment. Because issues of material fact remain, the Court will deny the defendants' motion.

I.    Background

      On the afternoon of June 6, 2007, the plaintiff was at home with her three-month-old daughter preparing to pick up her nine-year-old daughter from school when she received a telephone

call from a neighbor informing her that a police officer and a detective were outside of her home looking at her car. Deposition of Camilla Brown at 12:7-12:12 ("Brown Dep."), attached as Ex. A to Pl.'s Opp. to Defs.' Mot. for Summ. J. ("Pl.'s Opp.").

The plaintiff came to her door and asked the two officers, Officer Tracey Turk and Detective Joseph Cremen, why they were looking at her car. They replied that the car had been seen the previous day at the scene of a robbery. According to Officer Turk, he had been told that a man named "Rome" had the vehicle, and also had been told where the car could be found. The officers asked the plaintiff how long the car had been at her home. She replied that it had been parked there since about 1:30 or 1:45 p.m. the previous day, except for when she and her boyfriend, Jerome, went to pick up her daughter at about 2:00 or 2:30 p.m. Brown Dep. 12:12-12:22, 13:2-13:5; Deposition of Tracey Turk 19:16-19:20 ("Turk Dep."), attached as Ex. A to Defs.' Mot. for Summ. J. ("Defs.' Mot.").

After this exchange, one of the defendants told the plaintiff that the police were going to tow her vehicle to have it dusted for fingerprints. The police also asked her for some information about the man named "Rome." The plaintiff answered that he was her daughter's father. She told the officer that she did not know his last name and that she was not going to answer

any other questions because she did not know what was going on.[1]
One of the officers also asked the plaintiff whether Jerome lived at her home.  She replied that he did not.  According to the plaintiff, Jerome merely spent some nights there and kept some clothing and other items there.  The plaintiff also refused the officers' request to search her home without a warrant.  Brown Dep. 13:6-13:16, 15:5-15:7, 15:15-15:23, 23:15-24:25.

At some point after the defendants left the plaintiff's home that afternoon, another police vehicle arrived.  According to the plaintiff, she was told by one of the officers that nobody could enter or leave her home.  In addition, a police vehicle towed her car.  At about 6:30 p.m., Detective Cremen returned to the plaintiff's home with other officers to execute a search warrant.  The plaintiff asked Detective Cremen to see the search warrant.  According to the plaintiff, he did not show it to her, and she did not see a copy of the warrant until the defendants were deposed in this matter.  Detective Cremen has stated that he does not remember whether he showed the plaintiff the warrant.  Brown Dep. 17:20-17:24, 18:16-18:19, 19:7-19:17, 21:10-21:16;

---

[1] The plaintiff admits that she knew that "Rome" referred to her boyfriend, Jerome Woods, and that she did know his last name.  She states, however, that after she and the officer "had some words back and forth," he asked her whether she knew Jerome's last name and she said, "no, I'm not telling you nothing else."  See Brown Dep. 15:25-17:1.

Deposition of Joseph Cremen 23:23-24:1 ("Cremen Dep."), Defs.' Mot. Ex. B.[2]

According to the defendants, during the search of the plaintiff's home, Detective Cremen found a white, powdery substance in a small plastic bag on a shelf in the plaintiff's bedroom closet.  According to the plaintiff, he did not show her the substance.  Detective Cremen states that he later performed a field test on the substance, and that it tested positive for cocaine.[3]  The police also found in the plaintiff's bedroom a driver's license, Arizona traffic ticket, and paternity papers for Jerome Woods, along with some men's clothing.  Brown Dep. 21:3-21:6, 22:13-22:15, 24:7-24:12; Cremen Dep. 24:19-24:24; 29:9-29:15, 29:23-29:25.

After searching the plaintiff's home, Detective Cremen told the plaintiff that they had found cocaine and that she was under arrest.  The plaintiff told Detective Cremen that the cocaine was not hers and that she did not know anything about it.  Cremen Dep. 27:14-27:19.

---

[2] The defendants have attached a copy of a warrant dated June 6, 2007, to their motion for summary judgment.  See Defs.' Mot. Ex. D.

[3] The plaintiff states that the current location of these drugs is unknown.  Although the defendants have provided a property receipt stating that Detective Cremen found an off-white powdery substance that tested positive for cocaine, the defendants have not provided any evidence as to the current whereabouts of the drugs.  See Defs.' Mot. Ex. E.

The plaintiff was handcuffed and transported to the 35th District, where she was placed in a cell unit at approximately 8:00 p.m. At about 10:45 p.m., she was questioned by Detective Cremen. According to the plaintiff, he told her that she was only being charged with "simple possession" and that he could probably "make this go away in court" if the plaintiff gave him information. Brown Dep. 25:10-25:11, 29:2-29:5, 29:12-29:14, 42:4-42:5, 42:14-42:16.

The arrest report prepared by Detective Cremen lists the charges against the plaintiff as hindering apprehension and possession of cocaine. The plaintiff was later prosecuted for possession of cocaine and possession with intent to deliver cocaine. After a preliminary hearing, the charges against the plaintiff were dismissed for lack of evidence. See Defs.' Mot. Ex. F; Pl.'s Opp. Ex. E.

II. <u>Discussion</u>[4]

The plaintiff's suit is brought under 42 U.S.C. § 1983 for false arrest and false imprisonment in violation of the

---

[4] On a motion for summary judgment, a court must view the evidence and draw reasonable inferences therefrom in the light most favorable to the non-moving party. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 n.2 (1986). In doing so, a court must resolve all "doubts and issues of credibility against the moving party." <u>Smith v. Pittsburgh Gage & Supply Co.</u>, 464 F.2d 870, 874 (3d Cir. 1972). Summary judgment is proper if the pleadings and other record evidence show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P.(c).

Fourth Amendment.[5]  The defendants argue that they are entitled to summary judgment (1) because there was probable cause to arrest the plaintiff for the crimes of hindering apprehension and possession of a controlled substance, and (2) because they are entitled to qualified immunity.  The Court finds that issues of material fact exist and will deny the defendants' motion.

    A.    <u>Probable Cause</u>

An arrest may violate the Fourth Amendment if it is made without probable cause to believe that a crime has been committed.  <u>Barna v. City of Perth Amboy</u>, 42 F.3d 809, 819 (3d Cir. 1994).  The proper inquiry in a section 1983 claim based on false arrest is "whether the arresting officers had probable cause to believe the person arrested had committed the offense."  <u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 634 (3d Cir. 1995).  If the arresting officer lacked probable cause, the arrestee also has a claim under § 1983 for false imprisonment based on her detention pursuant to that arrest.  <u>Id.</u> at 636.

Typically, the existence of probable cause in a § 1983 action is a question of fact for the jury.  <u>Wilson v. Russo</u>, 212 F.3d 781, 796 (3d Cir. 2000) (quoting <u>Sherwood v. Mulvihill</u>, 113

---

[5] The complaint, which the plaintiff filed pro se before obtaining counsel, stated that her arrest violated the First, Fourth, Fifth, Sixth, and Eighth Amendments.  At this stage, the plaintiff's claim sounds in false arrest and false imprisonment, which are appropriately considered under the Fourth Amendment.

F.3d 396, 401 (3d Cir. 1997)); Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998).  A district court may, however, conclude that probable cause exists as a matter of law and grant summary judgment if the evidence, when viewed in the light most favorable to the plaintiff, would not reasonably support a contrary factual finding.  See Sherwood, 113 F.3d at 401.

The United States Court of Appeals for the Third Circuit has stated that police have probable cause to arrest "if the circumstances are sufficient to cause a prudent person to believe that a crime has been committed and the person to be arrested committed it."  United States v. Stubbs, 281 F.3d 109, 122 (3d Cir. 2002).  In conducting this inquiry, a court considers the totality of the circumstances, and "must assess the knowledge and information which the officers possessed at the time of arrest, coupled with the factual occurrences immediately precipitating the arrest."  Id.

The defendants move for summary judgment on the basis that there was probable cause to arrest the plaintiff for hindering apprehension in violation of 18 Pa. Cons. Stat. Ann. § 5105(a) and for possession of a controlled substance in violation of 35 Pa. Cons. Stat. Ann. § 780-113(a)(16).  With respect to hindering apprehension, the defendants argue that they had probable cause to arrest her based on the fact that she provided false information to a law enforcement officer.  With

respect to the possession charge, they argue that probable cause existed based on their discovery of cocaine in her home.

    1.    <u>Hindering Apprehension</u>

Under Pennsylvania law, a person commits an offense if, with the intent to hinder the apprehension, prosecution, conviction or punishment of another for crime, she provides false information to a law enforcement officer. 18 Pa. Cons. Stat. Ann. § 5105(a)(5).

The defendants argue that they had probable cause to arrest the plaintiff because she gave them false information. Specifically, they point to the fact that the plaintiff has since admitted that she knew what Jerome's last name was, even though she told the defendants that she did not. Defs.' Mot. 7.

According to the plaintiff, when asked whether or not she knew Jerome's last name, she replied, "I don't know," and "no, I'm not telling you nothing else." She also told the defendants that she would not answer any other questions because she did not know what was going on.

This evidence, when viewed in the light most favorable to the plaintiff, highlights an issue of material fact. The plaintiff did respond to the officers' questions - in part - by stating that she did not know Jerome's last name. Given the totality of her statements, however, a reasonable jury could find that she was not lying with the intent to hinder arrest, or at

least that the defendants would not have had reason to believe that she was lying at the time she made the statements.[6]  Rather, it could believe that she merely did not wish to answer any more questions without further explanation from the defendants, who told her that they were going to tow her car and obtain a warrant to search her home.

The plaintiff's theory of the case is that the defendants fabricated charges against her in order to pressure her into providing them information.  To the extent that the jury believes that theory of the case, it could reasonably conclude that the defendants did not have probable cause to arrest the plaintiff for hindering apprehension.  A finding of probable cause as a matter of law is therefore not proper.

2.   Possession of a Controlled Substance

The defendants also argue that there was probable cause to arrest the plaintiff on the basis of the drugs that were allegedly found in the plaintiff's closet.  Although the defendants have submitted a property receipt and field test results for tests performed on the alleged drugs, the Court does

---

[6] Although the defendants insist that there was probable cause because it is "undisputed" that the plaintiff "provided misinformation" to police officers, the probable cause inquiry requires the Court to focus on the circumstances known to the officers at the time of the arrest.  What the plaintiff may have admitted afterward does not establish probable cause to believe that she was lying with the intent to hinder arrest at the time that she made the statement.

not find this evidence sufficient to grant summary judgment, given the plaintiff's conflicting version of the facts.

The plaintiff's argument is that there were, in fact, no drugs in her home, and that the defendants fabricated this charge against her. She states that she was never shown the drugs, and that the current location of the drugs is unknown. To the extent that the jury believes this version of events, the defendants would not have had probable cause to arrest for possession. The Court need not resolve this factual dispute at this time, and will instead deny the defendants' motion.

### B. Qualified Immunity

The defendants also invoke the defense of qualified immunity, which shields government officials performing discretionary functions from liability whenever their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." McGreevy v. Stroup, 413 F.3d 359, 364 (3d Cir. 2005) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

District courts considering claims of qualified immunity must conduct a two-step inquiry. First, the Court asks whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation. Second, where the plaintiff's factual allegations establish a constitutional violation, the Court asks whether the constitutional right was

clearly established, such that a reasonable officer would have understood that his actions were not pursuant to law.  See Bennett v. Murphy, 274 F.3d 133, 136-37 (3d Cir. 2002) (citing Saucier v. Katz, 533 U.S. 194 (2001)).

With respect to the initial inquiry, the plaintiff has presented sufficient evidence to raise a genuine issue of fact as to whether the defendants had probable cause, and thus, whether a constitutional violation occurred.  The defendants also argue, however, that even if the plaintiff has established a constitutional violation, their actions were objectively reasonable under the circumstances.

The law is clearly established that an officer must have probable cause to arrest.  The Court cannot determine at this stage whether the defendants' actions were objectively reasonable because there are genuine issues of material fact with respect to the conduct purportedly supporting probable cause in the first instance.  Because there are sufficient facts in the record for a jury to find that the defendants did not have probable cause, there are also sufficient facts for a jury to conclude that the defendants' conduct was unreasonable under the circumstances.  Summary judgment is therefore inappropriate.

An appropriate Order shall issue separately.